IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| JUSTIN BRADLEY, | § § |
| | § |
| Plaintiff, | § |
| | §   CIVIL ACTION NO. |
| V. | 4:10-CV-01065 |
| | § |
| MICHAEL ASTRUE, | § |
| COMMISSIONER OF THE | § |
| SOCIAL SECURITY | § |
| ADMINISTRATION, | § |
| | § |
| Defendant. | |

**MEMORANDUM AND ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT AND DENYING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Before the Court in this social security appeal is Defendant's Motion for Summary Judgment and Brief in Support (Document No. 10), and Plaintiff's Motion for Summary Judgment (Document No. 9). Having considered the cross motions for summary judgment, the administrative record, and the applicable law, the Court ORDERS, for the reasons set forth below, that Defendant's Motion for Summary Judgment (Document No. 10) is DENIED, Plaintiff's Motion for Summary Judgment (Document No. 9) is GRANTED, and the decision of the Commissioner is REMANDED for further proceedings.

**I.     Introduction**

Plaintiff Justin Bradley brings this action pursuant to Section 205(g) of the Social Security Act ("Act"), 42 U.S.C. §405(g), seeking judicial review of an adverse final decision of

the Commissioner of the Social Security Administration ("Commissioner") denying his application for disability insurance benefits (DIB) and supplemental security income benefits (SSI). Bradley argues that the Administrative Law Judge's (ALJ) decision is flawed because: the ALJ improperly determined the Plaintiff's back impairment did not meet the requirements of a listed impairment; the ALJ improperly determined Plaintiff's residual functional capacity (RFC); and the ALJ made an improper five step finding.

**II.     Administrative Proceedings**

On December 9, 2004, Bradley filed a Title II application for DIB. (Tr. 18). On December 29, 2004, the claimant also filed a Title XVI application for SSI. (Id.) In both applications, Bradley alleged his disability began on May 2, 2003, as a result of lower back pain and numbness in his lower extremities. (Tr. 248). The Social Security Administration denied his application at the initial and reconsideration stages. (Tr. 68-74). Bradley's request for a hearing before the ALJ was granted and ALJ, Richard Abrams, held a hearing on August 7, 2008. (Tr. 25-29). The ALJ issued a finding that Bradley was not disabled on October 14, 2008. (Tr. 18-29).

Bradley sought review of the ALJ's adverse decision with the Appeals Council. The Appeals Council will grant a request to review an ALJ's decision if any of the following circumstances are present: (1) it appears that the ALJ abused his discretion; (2) the ALJ made an error in law in reaching his conclusion; (3) substantial evidence does not support the ALJ's actions, findings or conclusions; or (4) a broad policy issue may affect the public interest. 20.C.F.R. §404.970; 20 C.F.R. §416.1470. After considering Bradley's contentions in light of the applicable regulations and evidence, the Appeals Council, on February 22, 2010, denied Bradley's request for review. The ALJ's decision was thus final. (Tr. 5-8).

Bradley appealed the ALJ's decision and filed a Motion for Summary Judgment and Brief in Support (Document Nos. 1 & 9). The Commissioner filed a Cross Motion for Summary Judgment and a Reply to Bradley's Motion for Summary Judgment (Document Nos. 10 & 11).

The appeal is now ripe for ruling.

### III.     Standard of Review of Agency Decision

The court's review of a denial of disability benefits is limited "to determining (1) whether substantial evidence supports the Commissioner's decision, and (2) whether the Commissioner's decision comports with relevant legal standards." *Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999). Indeed, Title 42, Section 405(g) limits judicial review of the Commissioner's decision: "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." The Act specifically grants the district court the power to enter judgment, upon the pleadings and transcript, "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the case for a rehearing" when not supported by substantial evidence. 42 U.S.C. 405(g). While it is incumbent upon the court to examine the record in its entirety to decide whether the decision is supportable, *Simmons v. Harris*, 602 F.2d 1233, 1236 (5th Cir. 1979), the court may not "reweigh the evidence in the record, nor try the issues de novo, nor substitute [its] judgment for that of the [Commissioner] even if the evidence preponderates against the [Commissioner's] decision." *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988); *see also Jones*, 174 F.3d at 693; *Cook v. Heckler*, 750 F.2d 391, 392-93 (5th Cir. 1985). Conflicts in the evidence are for the Commissioner to resolve. *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992).

The United States Supreme Court has defined "substantial evidence," as used in the Act, to be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co., v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence is "more than a scintilla and less than a preponderance." *Spelman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993). The evidence

must create more than "a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983).

### IV. Burden of Proof

An individual claiming entitlement to disability insurance benefits under the Act has the burden of proving his disability. *Johnson*, 864 F.2d at 344. The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §423(d)(1)(A). The impairment must be proven through medically accepted clinical and laboratory diagnostic techniques. 42 U.S.C. §423(d)(3). The impairment must be so severe as to limit the claimant in the following manner:

> he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied to work.

42 U.S.C. §423(d)(3). The mere presence of an impairment is not enough to establish that one is suffering from a disability. Rather, a claimant is disabled only if he is "incapable of engaging in any substantial gainful activity." *Anthony*, 954 F.2d at 293 (quoting *Milam v. Bowen*, 782 F.2d 1284, 1286 (5th Cir. 1986)).

The Commissioner applies a five-step sequential process to decide disability status:

1. If the claimant is presently working, a finding of "not disabled" must be made;

2. If the claimant does not have a "severe" impairment or combination of

>impairments, [he] will not be found disabled;
>
>3.     If the claimant has an impairment that meets or equals an impairment listed in Appendix 1 of the Regulations, disability is presumed and benefits are awarded;
>
>4.     If the claimant is capable of performing past relevant work, a finding of "not disabled" must be made; and
>
>5.     If the claimant's impairment prevents him from doing any other substantial gainful activity, taking into consideration his age, education, past work experience and residual functional capacity, he will be found disabled.

*Anthony*, 954 F.2d at 293; *see also Legget v. Chater*, 67 F.3d 558, 563 n.2 (5th Cir. 1995); *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991). Under this formula, the claimant bears the burden of proof on the first four steps of the analysis to establish that a disability exists. *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). If successful, the burden shifts to the Commissioner, at step five, to show that the claimant can perform other work. *Id.* Once the Commissioner shows that other jobs are available, the burden shifts, again, to the claimant to rebut this finding. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990). If, at any step in the process, the Commissioner determines that the claimant is or is not disabled, the evaluation ends. *Legget*, 67 F.3d at 564.

Here, the ALJ determined Bradley was not disabled at step five. At step one, the ALJ determined Bradley was not working; that Bradley's back pain was a severe impairment at step two; that this condition did not meet or equal the impairment listed in Appendix 1 at step three; that the pain precluded Bradley from doing his previous work at step four; but that Bradley's impairment did not prevent him from doing other substantial gainful activity, considering his age, education, past work experience, and RFC at step five. In this appeal, the Court must determine whether substantial evidence supports the ALJ's finding at step five and whether the correct legal standards were used to arrive at that conclusion, including whether the ALJ properly rejected opinions of treating physicians, whether the ALJ properly considered Bradley's obesity and side effects of his medication in assessing his RFC, and whether the ALJ's assessment of Bradley's credibility was proper.

In determining whether substantial evidence supports the ALJ's decision, the court weighs four factors: (1) the objective medical facts; (2) the diagnosis and expert opinions of treating physicians on subsidiary questions of f act; (3) subjective evidence of pain as testified to by the plaintiff and corroborated by family and neighbors; and (4) the plaintiff's educational background, work history and present age. *Wren*, 925 F.2d at 126.

V.   **Discussion**

   **A. Objective Medical Evidence**

The objective medical evidence shows that Bradley suffers from spinal injuries, which include a herniated disk and lumbar strain at L5-S1, as well as possible anxiety disorders and panic attacks.

Bradley's back problems began on May 2, 2003 when he tried to lift an air conditioner at work. He heard a pop, (Tr. 341), accompanied by burning and tingling, and was unable to get out of bed the next morning because of the pain. (Tr. 109). Bradley's initial treatment was performed by company doctors at Concentra Medical Centers, but eventually Bradley began seeking treatment from doctors not associated with his employer. (Tr. 166).

On May 6, 2003, X-rays taken by Dr. Ellison Wittels at Concentra Medical Centers revealed a lumbar strain for which Bradley was prescribed medications for pain and scheduled for physical therapy sessions. (Tr. 109-10). Bradley had a positive straight leg test at that time. (Tr. 109). Dr. Wittels also limited Bradley to pushing, pulling and carrying no more than 20 pounds. (Tr. 109-10). A physical therapist with Concentra noted Bradley had an antalgic gait in her evaluation performed on the next day. (Tr. 114). Ten days after the initial injury, Dr. Wittels added lumbar radiculopathy to Bradley's diagnosis. (Tr. 126). Over the course of his work with medical professionals at Concentra, Bradley's gait returned to normal, subsequent straight leg

6

tests were negative and overall the pained lessened, but did not disappear, with physical therapy.

On June 18, 2003, Bradley exercised his right to choose his own treating doctor and saw Paul Marullo, D.C. at the Pain and Injury Center. (Tr. 248). During his initial visit, Bradley had positive straight leg raises. (Tr. 249). Dr. Marullo ordered that Bradley continue his treatment regimen and therapy. He also referred Bradley to pain management specialist, Dr. Omar Vidal, and noted that Bradley was not capable of working at that time. (Tr. 249). During a follow up visit, Dr. Marullo noted that Bradley still had a restricted range of motion but was tolerating treatment well. He referred Bradley to orthopedic specialist, Dr. William Donovan and once again noted that Bradley was incapable of working at that time. (Tr. 247). Upon examination of Bradley's spine on August 25, 2003, Dr. Marullo once again opined that although Bradley was improving with therapy and tolerated treatment well, he had not reached maximum medical improvement (MMI) and was still incapable of working. (Tr. 249). A number of imaging tests performed on July 1, 2003 showed a herniated disk at L5-S1, (Tr. 252), but were otherwise normal (Tr. 252-55). Similarly, imaging done at the Doctor's Imaging Center on July 12, 2004, and an Electromyography (EMG) done on September 14, 2004 showed that Bradley's spine was normal aside from the herniated disk at L5-S1. (Tr. 397, 447).

On July 21, 2003, Bradley began seeing Dr. Omar Vidal for pain management. In his assessment, Dr. Vidal noted Bradley suffered from lumbar radiculopathy and a herniated disk. (Tr. 272). Dr. Vidal suggested steroid injections and additional medications to decrease muscle pain and muscle spasm. (Id.)

As per Dr. Marullo's recommendation, Bradley saw Dr. William Donovan at Northshore Orthopedics on September 4, 2003. Dr. Donovan's examination of the spine revealed lumbar tenderness, decreased sensation at right L5-S1 nerve root, and positive straight leg raises. (Tr.

7

241). Dr. Donovan indicated that Bradley was not at MMI and was not able to work. (Tr. 242). He also ordered that Bradley undergo neurological testing. (Tr. 243).

Since Bradley "failed to respond to conservative therapy" such as physical therapy, pain medication and steroid injections, Dr. Donovan referred Bradley to Dr. Son Nguyen to have a discogram performed. (Tr. 338). From March through September of 2004, Bradley saw Dr. Nguyen and on each visit, Dr. Nguyen noted existing lumbar radiculopathy, limited range of motion, decreased muscle strength, and straight leg raises with shooting pain. (Tr. 294-337).

On July 9, 2004, Chiropractor Randall J. Halbert wrote a letter at Dr. Marullo's request stating that Bradley had not reached clinical MMI and suffered from lumbar radiculopathy as well as lumbar herniated nucleus pulposus. (Tr. 425).

On September 23, 2007, Bradley was consultatively evaluated by Dr. Milton Kirkwood at the behest of the Disability Determination Services. Dr. Kirkwood's musculoskeletal exam revealed that Bradley had limited ability to flex and rotate and was unable to extend, stand on his toes or raise his foot. (Tr. 351). Moreover, Bradley was "exquisitely tender to the lightest of touch" and demonstrated positive axial loading. (Id.) Bradley's neurological exam revealed deep tendon reflexes of +2/4 and decreased pinwheel sensation in the right lower leg. (Id.) The claimant had difficulty getting into the supine position and could only raise either leg to about 30º. (Id.) Additionally, the claimant needed assistance from his wife when getting off the table. (Tr. 352). Dr. Kirkwood also noted that Bradley was "clearly disturbed by the chronic pain in which he is suffering in his low back." (Id.)

Dr. Kirkwood opined that Bradley's ability to work was "severely hampered" by his pain. He stated that Bradley had the RFC to lift or carry ten pounds occasionally; sit, stand or walk for thirty minutes at a time without interruption; sit, stand or walk for a total of two hours in an

8

8-hour work day; never climb, balance, stoop, crawl, kneel, crouch or be exposed to unprotected heights or moving mechanical parts; and occasionally operate a motor vehicle as long as only his left foot was used to operate the foot controls. (Tr. 355-61).

The objective medical evidence in the record shows that Bradley suffers from a herniated disc and lumbar radiculopathy – both severe ailments that produce significant pain. Although Bradley does exhibit many of the requirements of a conclusive disability under Listing 1.04 A, he does not meet every element required to establish disability as defined by the Act.[1] Accordingly, the objective medical evidence weighs in favor of the ALJ's decision.

### B. Diagnosis and Expert Testimony

The second element considered is the diagnosis and expert opinions of treating and examining physicians on subsidiary questions of fact. Unless good cause is shown to the contrary, "the opinion, diagnosis and medical evidence of the treating physician, especially when the consultation has been over a considerable length of time, should be accorded considerable weight." *Perez v. Schweiker*, 653 F.2d 997, 1001 (5th Cir. 1981). Indeed, "[a] treating physician's opinion on the nature and severity of a patients impairment will be given controlling weight if it is 'well supported…and not inconsistent with…other substantial evidence." *Newton v. Apfel*, 209 F.3d 448, 455. (5th Cir. 2000). For the ALJ to give deference to a medical opinion, however, the opinion must be more than conclusory and must be supported by clinical and laboratory findings. *Scott v. Heckler*, 770 F.2d 482, 485. (5th Cir. 1985); *Oldham v. Schweiker*, 660 F.2d 1078 (5th Cir. 1981). Further, regardless of the opinions and diagnoses and medical

---

[1] In order to meet Listing 1.04A, Plaintiff must have a disorder of the spine with: Evidence of nerve root compression characterized by neuro-anatomic distribution of pain; limitation of motion of the spine; motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss; and resulting inability to ambulate effectively, as defined by 1.00B2b. *See* 20 C.F.R. Part 404, Subpt. P, Appendix 1, §1.04A. At the hearing before the ALJ, Dr. Amusa testified that herniations with impingement on the subarachnoid space was not nerve root compression and that the impingement was not equivalent to nerve root compression. Accordingly, Dr. Amusa concluded that Bradley did not meet the requirements of a conclusive disability. (Tr. 557).

9

sources, "the ALJ has sole responsibility for determining a claimant's disability status." *Martinez v. Chater*, 64 F.3d 172, 176. (5th Cir. 1995).

The Social Security Regulations provide a framework for the consideration of medical opinions. Under 20 C.F.R. §§404.1527(d)(2)-(6), 416.927(d)(2)-(6), consideration of a physician's opinions must be based on:

(1) the physician's length of treatment of the claimant,

(2) the physicians frequency of examination

(3) the nature and extent of the treatment relationship

(4) the support of the physician's opinion afforded by the recorded medical evidence

(5) the consistency of the opinion with the record as a whole, and

(6) the specialization of the treating physician

*Newton*, 209 F.3d at 456. While opinions of treating physicians need not be accorded controlling weight on the issue of disability, in most cases such opinions must at least be given considerable deference. *Id.* As to opinions of examining physicians, the Commissioner gives more weight to the opinion of a source who has examined the plaintiff rather than the opinion of a source who has not performed such an examination. *See* 20 C.F.R. §404.1527(d)(1), 416.927(d)(1).

There are a number of expert opinions on the record including opinions from Dr. Wittels, Bradley's treating physician retained for workers' compensation purposes from the company where he sustained his injury; Dr. Marullo, Bradley's self-chosen physician; pain management expert, Dr. Omar Vidal; orthopedic specialist, Dr. Donovan, and Randall Herbert, a chiropractor. In addition, at the hearing before the ALJ, Dr. Amusa gave expert testimony based on her

examination of the medical evidence in the record.

According to Bradley, the ALJ failed to apply the appropriate legal standard when he found that Dr. Milton Kirkwood's RFC assessment was "entitled to no weight" because "it was not supported by physical examination findings." (Tr. 22). This basis for rejecting Dr. Kirkwood's opinion is not supported by the record. Dr. Kirkwood, who conducted a disability determination services evaluation, conducted both a musculoskeletal and neurological exam of Bradley. The findings of both exams, as explained by Dr. Kirkwood himself, support his opinion.[2] Even after acknowledging that Bradley showed evidence of symptom magnification, Dr. Kirkwood still opined that the claimant was unable to work because of severe pain. (Tr. 354). Although a number of X-rays taken of Bradley's spine yielded unremarkable results, other imaging (fluoroscopy and MRIs) that Dr. Kirkwood relied on established impairments with Bradley's spine that were capable of producing the pain he complained of. Dr. Kirkwood's findings assessment is consistent with his physical examination findings as well as MRIs, XRays, EMGs and fluorscopies on record.

Moreover, the ALJ failed to weigh the opinions of Dr. Marullo and Dr. Donovan, who examined Bradley, assessed his condition, and offered treatment. The ALJ rejected Dr. Kirkwood's assessment as unsupported by his physical examination. (Tr. 22). The ALJ also rejected the opinion of Dr. Marullo, who saw Bradley five times over the course of three months about the pain in his lower back. (Tr. 244-49). Dr. Marullo's findings of lumbar radiculopathy

---

[2]Dr. Kirkwood made the following summary of his findings:

> The claimant's ability to work is severely hampered by his pain.
>
> I will point out that there is evidence of symptom magnification with positive Waddell signs with the claimant being tender to just the lightest touch and showing negative skip in his hurt and positive axial loading as well as the subjective feeling of numbness is in no particular dermatomal pattern in his right leg.
>
> Once again, the claimant's severe pain, the necessity of taking multiple medications, and the dependency of his wife, is limited to what this claimant can do.
>
> It is somewhat interesting, however, that the claimant does drive short distances when "his leg is not numb."
>
> HA-1151-EK form has been filled out, and again, the claimant's inability to work because of severe pain is his primary disability. (Tr. 354)

11

and herniated disc were consistent with the other opinions in the record, including Dr. Donovan, an orthopedic specialist. Both Dr. Marullo and Dr. Donovan opined that Bradley had not reached MMI and could not work.

The law is clear that the ALJ must discuss the uncontroverted evidence he chooses to rely on, as well as the significantly probative evidence he rejects. The ALJ should have assessed all of the medical source opinions, should have discussed the reasons for the weight given to each, and should have stated his specific findings regarding Bradley's limitations, setting forth how he reconciled the discrepancies in the record. Because the ALJ did not properly consider the opinions of Bradley's treating and examining physicians and his rejection of Dr. Kirkwood's opinion is not supported by substantial evidence, this factor weighs against the ALJ's decision.

### C. Subjective Evidence of Pain

The next element to be weighed is the subjective evidence of pain, including the claimant's testimony and corroboration by family and friends. Not all pain is disabling, and the fact that a claimant cannot work without some pain or discomfort will not render him disabled. *Cook v. Hecker*, 750 F.2d 391, 395 (5th Cir. 1985). The proper standard for evaluating pain is codified in the Social Security Disability Benefits Reform Act of 1984, 42 U.S.C. § 423. The statute provides that allegations of pain do not constitute conclusive evidence of disability. There must be objective medical evidence showing the existence of a physical or mental impairment which could reasonably be expected to cause pain. Statements made by the individual or his physician as to the severity of the plaintiff's pain must be reasonably consistent with the objective medical evidence on record. 42 U.S.C. § 423. "Pain constitutes a disabling condition under the SSA only when it is 'constant, unremitting, and wholly unresponsive to therapeutic treatment." *Seders*, 914 F.2d at 618-19 (citing Darrell v. Bowen, 837 F.2d 471, 480 (5th Cir.

1988)). Pain may also constitute a non-exertional impairment which can limit the range of jobs a claimant would otherwise be unable to perform. *See Scott v. Shalala*, 30 F.3d 33, 35 (5th Cir. 1983). The Act requires this Court's findings to be deferential. The evaluation of evidence concerning subjective symptoms is a task particularly within the province of he ALJ, who has had the opportunity to observe the claimant. *Hames v. Heckler*, 707 F.2d 162, 166 (5th Cir. 1983).

At his hearing before the ALJ, Bradley testified to having "sharp, stabbing pain" in his lower back region that radiates down his right leg and sometimes causes him to fall. (Tr. 517). He testified to using a cane and a brace to help him move around on his bad days. (Id.) Bradley claims that he can go with his wife to help with grocery shopping, but has to take frequent breaks and has trouble lifting heavier items like sacks of potatoes. (Tr. 524-25). In addition to his prescribed medications, Bradley testified that he tries to alleviate some of the pain he experiences by doing stretches he learned in physical therapy, shifting positions often, and keeping his feet elevated. (Tr. 519-20). Bradley's wife corroborated his testimony, stating that his pain is "constant" and "always severe." (Tr. 544).

The ALJ found that Bradley's testimony was not credible, pointing to evidence of improvement in claimant's condition based on physical examinations, statements that Bradley's pain is manageable with no side effects, and the fact that despite his complaints, Bradley has not undergone surgery. (Tr. 22).

Credibility determinations, such as that made by the ALJ in this case in connection with Bradley's subjective complaints of pain are generally within the province of the ALJ to make. *See Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). Because the record shows that the ALJ made and supported his credibility determination, and because the ALJ did not rely on any

13

inappropriate factors in making his credibility determination, this factor also weighs in favor of the ALJ's decision.

### D. Education, Work History, and Age

The fourth element considered is the claimant's educational background, work history and present age. A claimant will be determined disabled only if the claimant's physical or mental impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §423(d)(2)(a).

As of the date of the last administrative hearing, Bradley was 29 years old, had a certificate for air condition repair from a community college, and had past work experience as a machine repairman and a bagger at Kroger. (Tr. 507-08, 510). The ALJ posed a hypothetical to a vocational expert (VE) about Bradley's ability to engage in his past work and other work:

> ALJ: Okay, I am going to begin a hypothetical question and so far I've addressed to the question a claimant of this Claimant's age education and job experience as testified to at the light exertional level. And so far I've put in limited stooping, twisting, crouching, kneeling, climbing of stairs or ramps. I've put in no crawling and balancing, climbing of ladders or scaffolds. I've also put in avoidance of hazards such as heights, vibrations and dangerous machinery operation. At the medical expert's suggestion, the ALJ then added "occasional foot pedals or other controls with the right lower extremities." (Tr. 574).] ALJ: Alright Dr. Nielson, with those restrictions in mind, are there any jobs that our hypothetical claimant could then perform? VE: I think that would put him down at the light, unskilled level, he doesn't have any transferable skills…and it would eliminate past so that's going to put him down to jobs light, unskilled such as an officer [sic] cleaner and basically that would be like a night office cleaner.

(Tr. 573-575). The ALJ then posed another hypothetical to the VE reducing the level to sedentary, and the VE gave the job options of sorter and final assembler. Bradley's attorney then posed a hypothetical to the VE with the restrictions suggested by Dr. Kirkwood including: the ability to occasionally lift up to ten pounds; ability to sit, stand, and walk for thirty minutes at

a time; the ability to sit for a total of two hours out of an eight hour work day, stand for two hours out of an eight hour work day, and walk for a total of two hours out of an eight hour work day; requires a cane to ambulate; unable to climb ropes, ladders, or scaffolds and can never stoop, kneel, crouch, or be exposed to unprotected heights, moving mechanical parts, and can only occasionally operate a motor vehicle. The attorney added the need for assistance with travel and inability to walk a block at a reasonable pace. (Tr. 576-77). To this hypothetical, the VE responded that those restrictions "would eliminate all jobs." (Tr. 577). Because the ALJ improperly rejected the opinions of Dr. Kirkwood in making his RFC determination, and because a determination of potential jobs that Bradley could perform was inextricably intertwined with his RFC, this factor weighs against the ALJ's decision.

## VI.   Conclusion and Order

Considering the record as a whole, further development of the record is necessary because substantial evidence does not support the ALJ's finding that Bradley could perform a full range of light work and because the ALJ failed to apply the proper standards in evaluating the medical opinions. The Court

ORDERS that Defendant's Motion for Summary Judgment (Document No. 10), is DENIED, that Plaintiff's Motion for Summary Judgment (Document No. 9), is GRANTED, and that this case is REMANDED to the Social Security Administration for further proceedings consistent with this Recommendation.

Signed at Houston, Texas, this 17th day of August, 2011.

Frances H. Stacy
United States Magistrate Judge

_____

17